Stewart, J.
 

 In this case the truth of the well pleaded allegations of the petition is admitted by the demurrer, and, therefore, we assume that all necessary steps have been taken, preliminary to the performance-by respondents of their legally imposed duties, for the issuance of the bonds as provided in the ordinance for the payment of the final judgments rendered against the city. Those judgments' were rendered in actions^ based upon the obligation of the city to pay its officers and general employees the portions of their respective' salaries fixed by ordinance and earned by such officers and employees but withheld by the city during the-stringency period between 1931 and 1937, which with-holdings were made without the passage of any ordinance reducing such lawfully fixed salaries.
 

 Whether the respondents should be required by writ of mandamus to perform their duties in accordance-with the prayer of the petition depends upon the construction of Sections 2293-2 and 2293-3, General Code..
 

 The pertinent part of Section 2293-2 reads:
 

 
 *504
 
 # But no subdivision or other political taxing unit shall create or incur any indebtedness for current operating expenses, except as provided in Sections .2293-3 * * *.”
 

 Section 2293-3, General Code, provides:
 

 “When the fiscal officer of any subdivision certifies to the bond-issuing authority that, within the limits of its funds available for the purpose, the subdivision, is unable to pay a final judgment or judgments rendered against the subdivision in an action for personal injuries or
 
 based on other noncontractual obligation,
 
 then such subdivision may issue bonds for the purpose ■of providing funds with which to pay such final judgment in an amount not exceeding the- amount of the .judgment or judgments together with the costs of suit in which such judgment or judgments are rendered and interest thereon to the approximate date when the proceeds of such bonds are available.” (Italics ours.)
 

 The judgments with which we are concerned in this ■case resulted from actions hy municipal officers and general employees against the city for unpaid portions •of their salaries which had been fixed and authorized by ordinance of the city. Assuredly because of Section '2293-2, General Code, the city could not legally have incurred any indebtedness for certain current operating expenses and there can be no doubt that the salaries of the municipal officers and general employees do constitute a part of the current operating expenses of the municipality, and if Section 2293-2, General Code, stood alone the city could not legally issue the bonds with which we are concerned in this case. However, 'Section 2293-2 provides an exception to the prohibition against the creation of any indebtedness for current ■operating expenses, and a part of that exception is the provision of Section 2293-3, General Code, to the effect
 
 *505
 
 that bonds may be issued to pay judgments in actions-for personal injuries or based on other noncontractual1 obligations.
 

 That brings us to the sole question which we must decide.
 

 Is the right to the salaries of public officers and' public genera] employees, either elective or appointive, based upon contract? To sustain the affirmative upon that question the respondents rely on the case of
 
 City of Cleveland
 
 v.
 
 Luttner,
 
 92 Ohio St., 493, 111 N. E., 280, Ann. Cas. 1917D, 1134. That case concerned the right of a former policeman, who had been ousted from office and subsequently restored thereto, to recover his salary as a police officer for the time during-which he had been wrongfully ousted. A divided court held that the wrongfully ousted police officer could recover such salary, and that “a public officer is a public-servant, whether he be a policeman of a municipality or the president of the United States. His candidacy for appointment or election, his commission, his oath, in connection with the law under which he serves, and' the emoluments of his office constitute the contract between him and the public he serves. ’ ’
 

 If the holding in that case is the law of Ohio then bonds cannot be issued to pay the judgments for the unpaid salaries of the municipal officers and employees in this case, for the reason that such judgments were for sums constituting current operating expenses which were not noncontractual in their nature.
 

 The relator argues, and cites several lower-court opinions to support his argument, that the above-quoted expression from the
 
 Luttner case
 
 is a mere obiter dictum and is not binding as an expression of a holding of this court. With this argument we do not agree. Webster’s new International Dictionary (2 Ed.), defines obiter dictum as “an incidental and col
 
 *506
 
 lateral opinion uttered by a judge, and therefore (as not material to his decision or judgment) not binding. * * * Hence, any incidental remark, reflection, comment, ■or the like.”
 

 With this definition we agree, and since the holding in the
 
 Luttner case
 
 was based upon the contractual relationship between a public officer or public general -employee and the political subdivision which he serves, the language above quoted from the
 
 per curiam
 
 opinion is not obiter dictum. However, we are of the opinion that the doctrine of the
 
 Luttner case
 
 should be reconsidered.
 

 Until its announcement in 1915 in the
 
 Luttner case,
 
 this court, through the years, had assumed in the pronouncement of its judges that the relationship between public officers and public general employees and the political subdivisions which they served was not based ■upon contract but that the relationship was entirely
 
 ■ex lege.
 

 In the opinion in the case of
 
 Knoup, Treas.,
 
 v.
 
 Piqua Branch of State Bank of Ohio,
 
 1 Ohio St., 603, 616, Judge Corwin said:
 

 “The best illustration of this, perhaps, will appear by comparing the nature of an office in England, and an office in America. An office like a franchise, is a royal gift: it is considered property, in England. Some offices are estates in fee simple, or feetail; some, estates for life, and some only estates at will. * * # There are some offices, also, which are said to be estates for a term of years, or for one year. And ministerial •offices may be granted in reversion, or to commence at a future period. Some offices are even assignable by ■deed. But, in America, a public officer is only a public agent or trustee, and has no proprietorship, or right •of property, in his office. * * *
 

 
 *507
 
 “It is true, that an officer elected by the legislature,, or the people, cannot be expelled from his office, arbitrarily, by a resolution, or act, because the Constitution prescribes an impeachment, or other mode of' trial for such cases, but if the office be created by the legislature, it may, in the absence of express constitutional restriction, be abolished or suspended; and yet the officer cannot claim compensation, for the loss of his office. He has no property, or individual right in it. He is but a trustee for the public; and whenever the public interest requires that the office should be-abolished, or the duties of the office become unnecessary, the incumbent cannot object to the abolition of the office.”
 

 In
 
 City of Steubenville
 
 v.
 
 Culp,
 
 38 Ohio St., 18, 43 Am. Rep., 417, the syllabus reads:
 

 ‘ ‘ A police officer, suspended from office, by the mayor of a city, under the authority granted by Sections 121 and 211 of the Municipal Code (66 Ohio Laws, 170, 184), is not entitled to wages during the period of such suspension, notwithstanding the council afterward declared the cause of suspension insufficient.”
 

 At page 23, Judge Longworth stated:
 

 “Offices are held, in this country, neither by grant nor contract, nor has any person a vested interest or private right of property in them. ’ ’
 

 In the case of
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Hawkins,
 
 44 Ohio St., 98, 109, 5 N. E., 228, Judge Minshall said:
 

 “The incumbent of an office has not, under our system of government, any property in it. His right to-exercise it is not based upon any contract or grant. It is conferred on him as a public trust to be exercised for the benefit of the public. Such salary as may be-attached to it, is not given because of any duty on the part of the public to do so, but to enable the incumbent
 
 *508
 
 the better to perform the duties of his office by the more exclusive devotion of his time thereto.”
 

 In the case of
 
 Mason
 
 v.
 
 State, ex rel. McCoy,
 
 58 Ohio St., 30, 55, 50 N. E., 6, 41 L. R. A., 291, Judge Spear said:
 

 “A public office is a trust held for the benefit of the public. The incumbent, if he performs the duties, ■may be entitled to the emoluments, but he cannot have, under our governmental svstem, any property in the office itself.”
 

 In the case of
 
 State, ex rel. Holbrock,
 
 v.
 
 Egry,
 
 79 Ohio St., 400, 413, 87 N. E., 272, this court said:
 

 “The incumbents [municipal officers] have neither a property interest nor'a contract right in them [their ■offices].”
 

 Thus it is obvious that this court, until the
 
 Luttner ■case,
 
 was uniformly of the opinion that the relationship between public officers and public general employees and the public they serve is not
 
 ex contractu
 
 but is
 
 ■ex lege.
 

 In 2 McQuillin on Municipal Corporations (Rev. 2 Ed.), 54, Section 436, it is said:
 

 “The term office implies a duty and a discharge of that duty. Public offices are created for the purpose ■of effecting the ends for which government has been instituted, which are the common good, and not for the profit, honor, or private interest ■ of any one man, family or class of men. In our form of government it is fundamental that a public office is a public trust, ■or ‘a public charge or employment,’ and not a vested property right * *
 

 It is said in the same volume, at page 235,’ Section 514:
 

 “In England, offices are considered incorporeal 'hereditaments, grantable by the Crown and a subject of vested or private interest. But in this country they
 
 *509
 
 are not held by grant or contract, nor, under our system of government, has any person a private property or vested right or interest in them. Therefore, in the absence of limitations in the organic law, all officers— federal, state and municipal — are subject to such modifications and changes as the proper authorities may deem advisable, irrespective of the consent of the officer.”
 

 In
 
 Taylor
 
 v.
 
 Beckham,
 
 178 U. S., 548, 577, 44 L. Ed., 1187, 20 S. Ct., 890, the Supreme Court of the United States, speaking through Chief Justice Fuller, said:
 

 ‘ ‘ The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. * * * In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. ’ ’
 

 This doctrine was reaffirmed in the cases of
 
 Gave
 
 v.
 
 State, ex rel. Newell,
 
 246 U. S., 650, 62 L. Ed., 921, 38 S. Ct., 334, and
 
 Snowden
 
 v.
 
 Hughes,
 
 321 U. S., 1, 88 L. Ed., 497, 64 S. Ct., 397.
 

 The principle that a public officer or public general employee does not hold his position
 
 ex contractu
 
 not only rests upon the great weight of authority but upon sound reason and logic. To constitute a valid contract there must be mutuality in the agreement, and yet it is obvious that, if a public officer or public general employee resigns before his term expires, the political subdivision which he served has no recourse against him.
 
 Reiter
 
 v.
 
 State, ex rel.,
 
 51 Ohio St., 74, 36 N. E., 943, 23 L. R. A., 681;
 
 Ratterman
 
 v.
 
 State,
 
 44 Ohio St., 641, 644, 10 N. E., 678. Likewise, if the relationship between the public officer or public general employee and the public he serves is contractual, the public it
 
 *510
 
 self cannot vary the
 
 terms
 
 of the contract, and yet it is universally held that, in the absence of constitutional or other legal restraint, the terms, emoluments and the duties of the office or employment may be changed or employment abolished without right of redress upon the part of the holder thereof.
 

 That the holding in the
 
 Luttner case
 
 has been viewed with doubt by this court is indicated in several subsequent opinions. In the case of
 
 Williams, Dir.,
 
 v.
 
 State, ex rel. Gribben,
 
 127 Ohio St., 398, 401, 188 N. E., 654, in a
 
 per curiam
 
 opinion, this court said:
 

 “Mandamus will not lie to enforce the payment of a claim unliquidated and indefinite in amount. Whatever view may be entertained by this court with reference to the right of the relator to recover in an action at law compensation or salary, or any portion thereof, for the period of exclusion from office, upon a reexamination of the doctrine announced in the case of
 
 City of Cleveland
 
 v.
 
 Luttner, 92
 
 Ohio St., 493, 111 N. E., 280, Ann. Cas. 1917D, 1134, we now hold that such question can be considered only in an action at law.” In the case of
 
 Hansen
 
 v.
 
 City of Cleveland,
 
 132 Ohio St., 625, 628, 9 N. E. (2d), 619, this court said:
 

 “The decision in
 
 City of Cleveland
 
 v.
 
 Luttner, 92
 
 Ohio St., 493, 111 N. E., 280, Ann. Cas. 1917D, 1134, was based upon a finding that the plaintiffs had been illegally discharged. We have no inclination to further extend the doctrine there announced.”
 

 In the case of
 
 State, ex rel. Clinger, Pros. Atty.,
 
 v.
 
 White et al., Bd. of Commrs.,
 
 143 Ohio St., 175, 179, 54 N. E. (2d), 308, Judge Matthias quoted with approval a statement from 46 Corpus Juris, 1014, Section 233, as follows:
 

 ‘ ‘ ‘ The person rightfully holding an office is entitled to the compensation attached thereto; this right does not' rest upon contract, and the principles of law
 
 *511
 
 governing contractual relations and obligations in ordinary cases are not applicable. * * # Tbe right to the compensation attached to a public office is an incident to the title to the office and not to the exercise of the functions of the office; hence, the fact that officers have not performed the duties of the office does not deprive them of the right to compensation, provided their ■conduct does not amount to an abandonment of the ■office.’ ”
 

 So it is evident by the expressions of this court prior to the
 
 Luttner case
 
 as well as since that the doctrine announced in that case was neither well reasoned ■nor supported by authority.
 

 At the time the salaries were earned for which the .judgments against the city were rendered, Section 5625-33, General Code (112 Ohio Laws, 406), was in full force and effect. That section stated the prelimi:nary steps which must have been taken before one could enter into a valid contract with a municipality, such .as the certification by the fiscal officer that the money required for such contract was lawfully appropriated for such purpose and was in the treasury or in the process of collection to the credit of an appropriate fund free from any previous encumbrances. Without any doubt, that statute did not apply to the salaries of municipal officers or municipal general employees. Although such section has been amended, the amended section does not apply to the salaries of municipal of■ficers or municipal general employees.
 

 We hold, therefore, that the relation between a municipal officer or municipal general employee and the municipality he serves is not
 
 ex contractu
 
 but is
 
 ex lege,
 
 and, although such officer or employee can doubtless recover for his fixed salary for services actually performed, his right of action would not be
 
 ex contractu
 
 but
 
 ex lege.
 
 This holding requires us to overrule the holding, in the
 
 Luttner case,
 
 to the effect that the re
 
 *512
 
 lationship of a. public officer and the public he serves is based
 
 upon
 
 contract.
 

 For the reasons stated, the demurrer to the petition is overruled, and the writ of mandamus prayed for is granted.
 

 Writ allowed.
 

 Weygandt, C. J., Zimmerman and Sohngen, JJ., concur.
 

 Matthias and Hart, JJ., dissent.
 

 Turner, J., not participating.