THE STATE, EX REL. SCHULMAN, DIR. OF LAW, CITY OF
CLEVELAND, *v.* TEGREENE, DIR. OF FINANCE, CITY OF
CLEVELAND.

[Cite as State, ex rel. Schulman, v. Tegreene (1978),
55 Ohio St. 2d 22.]

(No. 78-264—Decided July 5, 1978.)

*Messrs. Hahn, Loeser, Freedheim, Dean & Wellman* and *Mr. Neil K. Evans,* for relator.

*Messrs. Tricarichi, Carnes & Kube* and *Mr. Charles S. Tricarichi,* for respondent.

*Per Curiam.* The present bond issuing capacity of a municipal corporation in this state is founded primarily upon the principle that a municipal corporation should have the capacity to amortize the cost of capital improvements over the life of such improvements, but such municipal corporation should pay current operating expenses from current revenues. R. C. 133.24 provides, in pertinent part, that:

"The taxing authority of any subdivision may issue the bonds of such subdivision for the purpose of acquiring or

constructing any permanent improvement which such sub-division is authorized to acquire or construct. * * * No subdivision or other political taxing unit shall create or incur any indebtedness for current operating expenses, except as provided in sections 133.27 to 133.31, inclusive, of the Revised Code."

One of the exceptions referred to in R. C. 133.24, as relevant to the instant cause, is R. C. 133.27, which provides as follows:

"When the fiscal officer of any subdivision certifies to the bond-issuing authority that, within the limits of its funds available for the purpose, the subdivision is unable to pay a final judgment or judgments rendered against the subdivision in an action for personal injuries or based on any other noncontractual obligation, then such subdivision may issue bonds for the purpose of providing funds with which to pay such final judgment in an amount not exceeding the amount of the judgment or judgments together with the costs of the suit in which such judgment or judgments are rendered and interest thereon to the approximate date when the proceeds of such bonds are available."

This exception expressly permits bonds to be issued to fund judgments rendered for personal injuries or any other noncontractual obligation for which funds are not available.

The City argues that it was put into such a position*

_____

*In May 1971, the City filed a complaint with the Federal Power Commission (FPC). In its complaint, the City requested an order under Section 202(b) of the Federal Power Act, Section 824a(b), Title 16, U. S. Code, requiring Cleveland Electric Illuminating Co. (CEI) to establish a permanent electrical interconnection with the City's light plant.

In March 1972, the FPC found that an emergency existed by reason of a shortage of reliable facilities whenever the City's largest generating unit was out of service. The FPC did, however, determine that the City should not be able to use the interconnection unless and until all available generating capacity of the City was in operation. The Presiding Examiner ordered the permanent interconnection on specified terms and conditions.

The City appealed the terms and conditions imposed and the rates

that it was compelled to enter into the contract with CEI and, therefore, this contractual obligation should not be considered as the voluntary act of the City.

In 1921, the Ohio General Assembly, by enacting the Griswold Act (109 Ohio Laws 336), changed the earlier law that permitted municipal corporations to fund current operating expenses through the issuance of bonds. This Act was adopted "[t]o prohibit the creation or incurring of indebtedness of political subdivisions of the state for current expense * * *." The Griswold Act changed prior law and set forth the principle, subject to exceptions, that political subdivisions should not be permitted to incur long-term indebtedness for obligations properly payable from current operating revenues.

In May 1927, the Ohio General Assembly approved The Uniform Bond Act, 112 Ohio Laws 364, which continued in effect the prohibitions of the Griswold Act with substantially the same exceptions.

The primary pronouncement by this court on the issue of bonds for non-contractual obligations is found in *State, ex rel. Gordon,* v. *Barthalow* (1948), 150 Ohio St. 499. The city of Columbus failed to pay the salaries of some city employees based upon an inability to pay. The employees sued the city and their claims were reduced to judgment. The city council passed an ordinance providing for the issuance of bonds to pay these judgments. The ordinance was approved by the mayor and the city

set by the FPC. On January 11, 1973, the FPC in Opinion No. 644 modified the Presiding Examiner's initial decision in certain respects.

By letter dated March 16, 1973, to the FPC, the City agreed to all of the terms and conditions of Opinion No. 644 while reserving the right to appeal such decision to the United States Court of Appeals, District of Columbia Circuit.

To implement compliance with the FPC orders, on January 20, 1975, Council of the City passed ordinances authorizing the Director of Public Utilities to enter into agreements with CEI for the installation and equipment costs of the interconnection and to enter into an agreement with CEI for an interim or permanent interconnection. On April 17, 1975, these agreements authorized by the City Council were signed by the parties and on April 28, 1975, forwarded to the FPC for filing pursuant to Opinion No. 644.

auditor was directed to certify a copy of the ordinance to the county auditor. The city auditor did not do so on the basis that the judgments were based upon non-contractual obligations under the then effective bond law, G. C. 2293-3. A complaint for a writ of mandamus was filed in this court seeking to require the city auditor to certify a copy of the ordinance to the county auditor.

This court recognized that under G. C. 2293-2, there was no doubt that salaries of municipal officers and employees were current operating expenses and that, if G. C. 2293-2 stood alone, bonds could not legally be issued to pay for such salaries. However, this court, also, held that these judgments fell within the exception to G. C. 2293-2, set forth in G. C. 2293-3, that the judgments were based upon "noncontractual obligations." In so doing, this court held that the employees' salaries were based upon an *ex lege* relationship with the city and were not based upon contracts. Judgment bonds could, therefore, properly be issued and the writ was allowed.

However, in the cause at bar, no *ex lege* relationship exists between the City and CEI. Their relationship is purely contractual. This contract may have been thrust upon the City through the force of circumstances and several of the terms of the contract were virtually dictated by the Federal Power Commission, but it is in fact a contractual obligation.

The bonds, concerning which the City would have this court order the Director of Finance to take actions necessary for their implementation would be based upon contractual obligations and, therefore, are illegal under R. C. 133.27.

Accordingly, the writ of mandamus is denied.

*Writ denied.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and STEPHENSON, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for LOCHER, J.