**Todd M. ATKINSON, et al., Plaintiffs,**

v.

**CITY OF DAYTON, et al., Defendants.**

**No. C–3–97–301.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 10, 1998.

Barry S. Galen, Barry S. Galen Attorney at Law, Dayton, OH, for Todd M. Atkinson, plaintiff.

Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH, for City of Dayton, defendant.

Neil Frank Freund, (See above), for Dayton Civil Serv Bd, defendant.

ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 19); NOTICE OF INTENT TO ENTER SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SANDRA HUGGINS IN HER INDIVIDUAL CAPACITY; THIS ENTRY IS NOT A FINAL, APPEALABLE ORDER.

RICE, Chief Judge.

This matter comes before the Court upon the Defendants' Motion for Summary Judgment (Doc. # 19) on the Plaintiffs' Complaint (Doc. # 1), a complaint which alleges violations of 42 U.S.C. §§ 1983, 1988, and 1441; 5 U.S.C. § 3101; 2 U.S.C. § 601; and the Fifth and Fourteenth Amendments to the United States Constitution. The Complaint also includes unspecified state-law claims.

The five Plaintiffs are former police officer recruit candidates. They filed their Complaint on July 3, 1997, after being enjoined on May 18, 1997, from participating in the Dayton police academy training class, which was to begin the following day. The injunction, issued by a state common pleas court, stemmed from a disagreement between the Dayton Fraternal Order of Police ("FOP") and the City of Dayton ("City") over the City's obligation to comply with a 1995 drug use and drug testing policy it had negotiated with the FOP.

The terms of the 1995 agreement prevented the City from hiring any applicant for employment as a sworn police officer if the applicant ever had used, abused, or trafficked in any "controlled substance" or "dangerous drug" as defined by Ohio law. (Arbitrator's Opinion and Award, attached to Doc. # 19, as Exh. C). The agreement included an exception, however, if an applicant had used only marijuana, and the use had ended two or more years prior to the application for employment as a police offi-

cer. (*Id.*) Additionally, the agreement required all applicants to undergo a background investigation, a polygraph test, and a drug test prior to being approved for employment. (*Id.*)

The FOP filed two grievances on November 14, 1995, alleging that the City had failed to follow this negotiated 1995 drug policy when, on November 1, 1995, it issued its "General Order 1.02–2," without including in the order the prohibition against hiring any police officer applicant who ever had used, abused, or trafficked in a controlled substance or dangerous drug, other than marijuana use ending more than two years before the individual's application for employment. (*Id.*). Thereafter, on July 1, 1996, the FOP sought to enjoin commencement of a July 8, 1996, police academy class until the City adhered to the 1995 drug policy. The FOP sought to enjoin the class because Plaintiffs Todd M. Atkinson and Mark Shively allegedly were ineligible under the negotiated 1995 drug use policy because they had used drugs other than marijuana. (*Fraternal Order of Police v. City of Dayton,* Montgomery Cty. C.P. No. 96–2758 (July 13, 1996), attached to Complaint, Doc. # 1, as Exh. B).[1]

The Common Pleas Court subsequently granted the injunction on July 13, 1996, and enjoined the City from beginning its police academy class until the FOP's grievance was resolved through arbitration. (Doc. # 1, at Exh. B). The state court later modified its injunction and allowed the academy class to begin, although without Atkinson and Shively. (*Id.* at Exh. C). Thereafter, on December 10, 1996, an arbitrator ruled that the City and the FOP had agreed to the drug screening requirements set forth above. (Arbitrator's Opinion and Award, Doc. # 19 at Exh. C). Consequently, the arbitrator found the 1995 policy "controlling" and, as a result, reasoned that the "Director and the Chief of Police are required not to recommend any applicant for police recruit to the Civil Service Board for employment, if an investigation of their background reveals use, purchase, sale, or transportation of illegal drugs or if the applicant fails the drug test which is now permitted as part of the turpitude evaluation of each applicant." (*Id.*).

On January 30, 1997, however, the Dayton Civil Service Board issued a policy disqualifying, as police recruit candidates, applicants who had participated in any illegal drug activity within the five years prior to their background investigation. This language conflicted with the 1995 agreement between the City and the FOP. As noted above, that agreement disqualified any applicant who had *ever* used an illegal drug other than marijuana. Under the terms of the 1995 negotiated agreement, the Plaintiffs did not qualify for academy positions, whereas under the more lenient Civil Service Board policy, they did qualify. Consequently, the FOP filed another grievance in March, 1997, seeking enforcement of the arbitrator's ruling. (*Fraternal Order of Police v. City of Dayton,* Montgomery Cty. C.P. Nos. 96–2758, 97–5725, and 97–5727 (May 18, 1997), attached to Doc. # 1 as Exh. N, O). The FOP also sought another injunction to enjoin Atkinson, Shively, and the three other Plaintiffs from participating in the police academy training class scheduled to begin on May 19, 1997. (*Id.*). The Montgomery County Common Pleas Court granted the FOP's request on May 18, 1997, and enjoined the five Plaintiffs from participating in any academy class. (*Id.*). In so doing, the

---

1. According to the arbitrator, the City had agreed to the negotiated drug policy in a 1995 draft order, but later omitted the policy, as it relates to police recruits, when publishing the order in its final form. (Arbitrator's Opinion and Award, Doc. # 19 at Exh. C). In so doing, the City apparently believed that the negotiated policy was not binding on police recruits because the FOP lacked the authority to bargain on their behalf. (*Id.*). The arbitrator's ruling also indicates that the City believed the negotiated policy infringed upon the Civil Service Board's authority to determine which applicants were eligible for police recruit positions. (*Id.*).

court determined that the Plaintiffs had knowingly and illegally used a "dangerous drug" or "controlled substance," other than marijuana, thereby rendering them ineligible for employment under the terms of the City's 1995 agreement with the FOP. (*Id.*).

The Plaintiffs then filed their Complaint herein on July 3, 1997, asserting a variety of claims against the City, the Dayton Civil Service Board, Civil Service Board Secretary and Chief Examiner Sandra Huggins, in her individual and official capacity, and Ronald Lowe, in his official capacity as the Dayton Chief of Police. (Doc. # 1). In response, the Defendants have moved for summary judgment on the Plaintiff's claims. (Doc. # 19). Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (providing jurisdiction for actions brought under 42 U.S.C. § 1983), and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

I. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions,

answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 [6th Cir.1987]). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, de-

positions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Analysis*

### A. *Claims Under 42 U.S.C. § 1441, 5 U.S.C. § 3101, and 2 U.S.C. § 601*

In their Complaint, the Plaintiffs purport to bring suit under, *inter alia*, 42 U.S.C. § 1441, 5 U.S.C. § 3101, and 2 U.S.C. § 601. The Defendants question the relevance of these statutory provisions, however, in their Motion for Summary Judgment (Doc. # 19 at 30–31). In response, the Plaintiffs acknowledge that their citation to these statutory sections was an oversight, and that the provisions are not relevant to the present dispute. (Doc. # 21). Accordingly, the Court sustains the Defendants' Motion for Summary Judgment on the Plaintiffs' claims arising under 42 U.S.C. § 1441, 5 U.S.C. § 3101, and 2 U.S.C. § 601.

### B. *Claims Under 42 U.S.C. § 1983 and the 5th and 14th Amendments*

The Plaintiffs contend they possessed liberty and property interests in police academy positions and the concomitant opportunity to become permanent Dayton police officers. (Complaint, Doc. # 1, at ¶¶ 26–30, 36–40). The Plaintiffs further attribute their loss of these interests and rights to the City's lack of a coherent drug testing policy. In essence, they blame the City for its dispute with the FOP over applicable drug-use standards, and contend that the dispute resulted in the state court injunction and the deprivation of their liberty and property interests. (*Id.*). In response, the Defendants argue that the Plaintiffs possessed no property interest in their employment with the City. Furthermore, they contend the Plaintiffs were not deprived of any liberty interest.[2]

---

2. In their *Memorandum opposing summary* judgment, the Plaintiffs contend the Defen-

### 1. Plaintiffs' Asserted Property Interest

■ When considering a § 1983 procedural due process claim,[3] the Court first must determine whether the interest at stake is a protected property interest. *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir.1997). "Only after meeting this requirement can the plaintiff prevail by showing 'that such interest was abridged without appropriate process.'" *Id.*, citing *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1108 (6th Cir. 1995). The Sixth Circuit has recognized that property interests are not created by the Constitution. Rather, "'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Averitt v. Cloon*, 796 F.2d 195, 199 (6th Cir.1986), quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

A review of applicable Ohio law persuades the Court that the Defendants did not deprive the Plaintiffs of a protected property interest. The position of police recruit is part of the City's competitive classified civil service. (Doc. # 19, Affidavit of Sandra Huggins, at Exh. D). The Dayton Civil Service Board has promulgated rules and regulations governing appointments to positions such as police recruit. Specifically, Rule 9, § 1(A) provides that "[a]n original appointment to a full-time position made from a certified competitive or non-competitive list shall be a permanent appointment, but the incumbent is subject to completion of a probationary period, as outlined in Rule 10." (Doc. # 19, Exh. D1). In turn, Rule 10 subjects any person initially appointed in the competitive class to a six-month probationary period, provides for discharge at any time within the six months, and grants the terminated employee no right to appeal. (*Id.*). Likewise, Dayton's City Charter provides: "Any appointment or promotion shall not be deemed complete until a period of probation not to exceed 6 months has elapsed, and a probationer may be discharged or reduced at any time within the said 6 months, upon recommendation of the head of the department in which said probationer is employed, with the approval of the majority of the board." (*Id.* at Exh. H, § 99).

■ Consequently, if the Plaintiffs had entered the Academy as police recruits, they would have encountered a probationary period, and their appointment would not have been deemed complete until after that period. Ohio law provides that probationary employees and original appointees do not possess a property interest in government employment. *Feliciano v. City of Cleveland*, Nos. C85–3356 and C86–4373 (N.D.Ohio Nov. 26, 1991); *Taylor v. City of Middletown*, 58 Ohio App.3d 88, 568 N.E.2d 745 (1989); *Jacomin v. City of*

---

dants also are arguing (1) that the Civil Service Board, as an entity separate from the City, is not subject to the 1995 drug policy negotiated with the FOP and (2) that police recruits should be subject to one drug policy, while sworn officers are subject to a different policy. (Doc. # 21 at 15). Although the City may have advanced such arguments in the state court proceedings, or before the arbitrator, a review of the Defendants' Motion for Summary Judgment reveals no such assertions. In any event, these issues are immaterial for present purposes. The issue before the Court is not with which drug policy police recruits should be required to comply. Rather, the issue is whether the Plaintiffs possessed a property interest in their employment.

**3.** The Plaintiffs' Complaint does not specify whether they allege procedural or substantive due process violations with respect to their "property interest" claim. In their Motion for Summary Judgment, the Defendants proceed on the assumption that the alleged deprivation of a property interest presents a procedural due process issue. *See* Doc. # 19 at fn. 2. In their Memorandum opposing summary judgment, the Plaintiffs have not disputed the Defendants' assumption and, in fact, have responded as if their Complaint presents a procedural due process issue. Consequently, the Court likewise will proceed as if the Complaint alleges a procedural due process violation, rather than a substantive due process claim, with respect to the Plaintiffs' asserted property interest in City employment.

*Cleveland,* 70 Ohio App.3d 163, 590 N.E.2d 846 (1990).

██ Indeed, it is well established that until a probationary employee completes his term of probation, no recognized property interest in his or her employment exists. *Matulin v. Village of Lodi,* 862 F.2d 609, 616 (6th Cir.1988); *Bashford v. City of Portsmouth,* 52 Ohio St.3d 195, 198, 556 N.E.2d 477 (1990); *Walton v. Montgomery Cty. Welfare Dept.,* 69 Ohio St.2d 58, 430 N.E.2d 930 (1982). In light of this clear authority, the Court concludes that the Plaintiffs, who had not even entered the academy, possessed no constitutionally protected property interest in their employment with the City. It would defy logic to hold that the Plaintiffs possessed a property interest in their City employment *before* they ever reported for work, but lost that property interest immediately upon arriving at the academy.[4]

██ In their complaint, however, the Plaintiffs suggest that a property interest existed, based upon an express contract they had with the City. In support, the Plaintiffs cite purported notices they received providing additional information and instructing them to report to the police academy on a particular day.[5] As the Defendants properly note, however, public employees in Ohio are employed as a matter of law and not pursuant to contract. In *Estabrook v. City of Dayton,* 1997 WL 1764764, No. C–96–71 (S.D.Ohio March 24, 1997), the Court recognized this principle, stating:

"The Ohio Supreme Court has twice held that a 'public officer or employee holds his office as a matter of law *and not of contract,* nor has such officer or employee a vested interest or a private right of property in his office or employment.' *Fuldauer v. City of Cleveland,* 32 Ohio St.2d 114, 290 N.E.2d 546 (1972) (para. 3 of syllabus) (emphasis added) (following *State ex rel. Gordon v. Barthalow,* 150 Ohio St. 499, 83 N.E.2d 393 (1948) (para. 1 of syllabus)). These holdings, which are binding upon this Court, *see Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), have not been altered or overturned by the Ohio Supreme Court."

*Id.* at 12–13. Given that the Plaintiffs could not have been employed pursuant to contract, the Court finds unpersuasive their argument that a property interest arose as a result of their "express contract" with the City. Furthermore, even assuming *arguendo* that the Plaintiffs could have been employed pursuant to a contract, the notices from the City were insufficient, as a matter of law, to constitute a contractual agreement. One of the notices instructed police recruits to pick up a uniform and wear it "when you report to the Dayton Police Academy at 8:00 a.m. on Monday, May 19, 1997." It also instructed the Plaintiffs to establish City residence. (Doc. # 21 at Exh. 6). The other notice instructed police recruits for the May, 1996, class to report in uniform on a particular date, stated that recruits could not hold other jobs, and also included a City residence requirement. (*Id.* at Exh. 5). As the Defendants note, however, neither notice provides for a definite term of employment, and absent language granting

---

4. In opposition to the Court's conclusion, the Plaintiffs stress that the City paid other members of the 1996 academy class who were forced to wait to begin training as a result of the injunction. This fact, they argue, demonstrates that the recruits possessed a property interest in their employment. The City's voluntary decision to pay the other recruits does not demonstrate that they, or the Plaintiffs, possessed a property interest in their jobs. In fact, as the Court noted above, police recruits *do not* possess such a property interest.

5. Although the notices are attached as an exhibit to the Plaintiffs' Memorandum opposing summary judgment, they have not been authenticated. *See* Doc. # 21 at Exh. 5 and 6. The Court will consider them, however, because the Defendants have not objected and, more importantly, because the Court finds the Plaintiffs' reliance upon the notices unpersuasive, without regard to their non-authentication.

employment for a specific period, an employment agreement in Ohio is presumptively at will. *Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653 (1995), *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Consequently, no express contract granted the Plaintiffs a property interest in employment with the City.

The Plaintiffs' Complaint also alleges that they possessed a property interest "in the contract by estoppel based upon the contract of the City and the subsequent detrimental reliance by Plaintiffs...." (Complaint, Doc. # 1 at 28, 38).[6] As noted above, however, no contract existed between the Plaintiffs and the City. Furthermore, this Court held in *Estabrook* that where a plaintiff cannot be employed by express contract, he cannot rely upon a theory such as implied contract or promissory estoppel for relief. *Estabrook*, No. C–3–96–71, at 22.[7] The Court also notes that the Montgomery County Common Pleas Court's injunctions *prevented* the Defendants from allowing the Plaintiffs to enter the academy class. Therefore, the Defendants would have performed an illegal act if they had permitted the Plaintiffs to enter the academy. Under such circumstances, the Court finds promissory estoppel inapplicable.[8] The Plaintiffs stress, however, that the injunctions arose because "the Defendants simply did not follow the appropriate procedures for screening recruits." (Doc. # 21). They also admit turning to City officials for guidance regarding the applicable drug testing policy. (*Id.*). Under Ohio law, however, those who deal with municipal

---

**6.** The Plaintiffs contend that in reliance upon the City's representations, they resigned from their prior employment, relocated within the City limits, and purchased uniforms. (Complaint, Doc. # 1 at ¶¶ 22–23, 32–33).

**7.** Even assuming that the doctrine of promissory estoppel applies, however, the Plaintiffs cannot establish a protected property interest in continued employment based upon the doctrine. In *McKane v. City of Lansing*, 134 F.3d 371, 1998 WL 25002 (6th Cir.1998) (unreported table decision), the Sixth Circuit recognized that "[i]n some cases, promissory estoppel may be a basis for a property interest under the Due Process Clause." *Id.*, citing *Hall v. Ford*, 856 F.2d 255, 265 (D.C.Cir. 1988) ("[plaintiff's] property interest depends upon his claim of entitlement [and] overlaps with his causes of action for breach of contract and promissory estoppel"); *National Juvenile Law Center, Inc. v. Regnery*, 738 F.2d 455, 464 (D.C.Cir.1984) ("assuming arguendo that the standards applicable to promissory estoppel should control the use of estoppel to create a promise giving rise to an expectation interest in a case brought under the due process clause"). An essential element of promissory estoppel, however, is a clear and unambiguous promise. *Kiel v. Circuit Design Technology, Inc.*, 55 Ohio App.3d 63, 562 N.E.2d 517 (1988). In the present case, the Court concludes, as a matter of law, that the unverified notices attached to the Plaintiffs' Memorandum do not constitute a clear and unambiguous promise of continued employment sufficient to create a property interest.

As the Court noted above, Ohio law provides that a probationary employee has *no* property interest in his job. Significantly, nothing in the City's notices can be read as a clear and unambiguous promise contravening the customary rule regarding probationary employees. Furthermore, any reliance upon such a promise, if it existed, would not have been reasonable given the Plaintiffs' probationary status, which was imposed by Civil Service Rules and the Dayton City Charter. The Plaintiffs are charged with notice of the contents of the Dayton City Charter and its Civil Service Rules. *Estabrook*, No. C–3–96–71 at 23, n. 16, citing *Kimbrell v. Seven Mile*, 13 Ohio App.3d 443, 445, 469 N.E.2d 954, 957 (1984).

**8.** In *Estabrook*, the Court recognized that promissory estoppel is intended "to prevent the harm resulting from the reasonable and detrimental reliance of an employee upon the false representations of his employer." *Estabrook*, No. C–3–96–71 at 22, citing *Karnes v. Doctors Hosp.*, 51 Ohio St.3d 139, 142, 555 N.E.2d 280, 283 (1990). The Court also noted that an employer's false promise is binding "if injustice can be avoided only by enforcement of the promise." *Id.* at 21, citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104–105, 483 N.E.2d 150, 154–155 (1985). In the present case, the Court cannot agree that the Defendants made "false" promises to the Plaintiffs. Rather, the subsequent state court injunctions simply prevented the Defendants from accepting the Plaintiffs as academy members.

corporations are charged with notice of limitations on the power of the corporations and their agents. At their peril, such persons must determine whether all necessary statutory formalities have been met. *Kimbrell v. Village of Seven Mile,* 13 Ohio App.3d 443, 469 N.E.2d 954, 957 (1984), citing *Welch v. Lima,* 89 Ohio App. 457, 102 N.E.2d 888 (1950), and *Schumacher Stone Co. v. Columbus Grove,* 73 Ohio App. 557, 57 N.E.2d 251 (1944).

In *Kimbrell,* the court found the plaintiff not entitled to recover damages resulting from his reliance upon an unenforceable job offer from a village council. Because the new position and salary were not properly created, the court reasoned that the plaintiff "was not entitled to rely upon any representations allegedly made by the council regarding the position, and he is not entitled to damages based upon such reliance." *Kimbrell,* 13 Ohio App.3d 443, 469 N.E.2d 954, 957–958. Similarly, in *West v. Bentleyville,* 42 Ohio App.3d 95, 96, 536 N.E.2d 401, 402 (1987), the court reasoned that "whoever relies upon the conduct of public authorities . . . must take notice of the limits of their power." Likewise, the Court finds the Plaintiffs not entitled to rely upon the City's representations even assuming, as the Plaintiffs suggest, that the Defendants mistakenly accepted them as cadets. In short, the Plaintiffs have not demonstrated any property interest in City employment arising by estoppel.

### 2. *Plaintiffs' Asserted Liberty Interest*

The Plaintiffs' Complaint alleges that the Defendants' actions deprived them of unspecified liberty interests. (Doc. # 1). In their Motion for Summary Judgment, the Defendants presume that the Plaintiffs' claim alleges a deprivation of their liberty interest in pursuing a career of their choice. The Plaintiffs do not dispute this presumption. In fact, their Memorandum opposing summary judgment fails to address the Defendants' arguments. Consequently, the Court will construe the Plaintiffs' Complaint as alleging a deprivation of their liberty interest in pursuing the career of their choice.

■ In *Joelson v. United States,* 86 F.3d 1413 (6th Cir.1996), the Court recognized that "[a] person has a protected liberty interest in his 'reputation, good name, honor, and integrity,' as well as in 'being free to move about, live, and practice his profession without the burden of an unjustified label of infamy.' " *Id.* at 1420 (citations omitted). In the employment context, a plaintiff asserting the loss of his liberty interest must establish (1) that stigmatizing statements were made in conjunction with the plaintiff's termination, (2) that the statements foreclose his ability to obtain other employment, (3) that the statements were made public, (4) that a dispute exists concerning the truth of the charges; and (5) that the public dissemination was voluntary. *Ludwig v. Bd. of Trustees of Ferris State Univ.,* 123 F.3d 404, 410–411 (6th Cir.1997); *see also Feliciano v. City of Cleveland,* Nos. C85–3356 and C86–4373 (N.D.Ohio Nov. 26, 1991) (Aldrich, J.) (noting that a plaintiff alleging the deprivation of his liberty interest must show a dispute concerning the truth of the employer's statements and some defamation by a state official in connection with the termination); *Merritt v. Canton Twp. Bd. of Trustees,* 125 Ohio App.3d 533, 708 N.E.2d 1082 (1998) (unreported) (noting that a liberty interest is infringed upon when the plaintiff demonstrates (1) a false statement, (2) stigmatizing in nature, (3) attending a government employee's discharge, (4) made public, (5) by the government employer, (6) without a meaningful opportunity for a hearing).

■ In the present case, the Defendants insist that they have not disclosed to the public any false or defamatory statements regarding the Plaintiffs' drug use. Furthermore, they argue that the Plaintiffs do not dispute the truth of the drug use allegations. In support of their arguments, the Defendants cite the Plaintiffs'

answers to questions in their applications, as well as the results of their polygraph examinations and other information contained in their application packets. See Exh. D2, D3, D4, D5, and D6, attached to Doc. # 19, filed under seal to preserve the Plaintiffs' confidentiality. The Plaintiffs have not responded to the Defendants' arguments or come forward with any evidence to create a genuine issue of material fact on this issue. Accordingly, the Court finds summary judgment in the Defendants' favor proper on the Plaintiffs' liberty interest claim.

### 3. Qualified Immunity

Defendant Ronald Lowe, the City's Chief of Police, contends that the doctrine of qualified immunity shields him from liability on the Plaintiffs' § 1983 claims. The Court finds this issue immaterial, however, because the Plaintiffs have sued Lowe only in his official capacity. "A suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government unit...." *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir.1989). In the present case, the Plaintiffs also have named the City of Dayton as a Defendant. Consequently, the suit against Lowe merely duplicates the Plaintiffs' suit against the City. As a result, the Court sustains the Defendants' Motion as it relates to the dismissal of Lowe from this litigation.

### C. Defendants' Liability Under 42 U.S.C. § 1988

Absent liability under 42 U.S.C. § 1983, no predicate exists for the Court to award the Plaintiffs attorney's fees under 42 U.S.C. § 1988. Section 1988 does not create an independent cause of action for civil rights violations. Accordingly, the Court sustains the Defendants' motion as it relates to the Plaintiffs' attorney's fees request.

### D. Plaintiffs' State Law Claims

The Plaintiffs' Complaint seeks to invoke the Court's jurisdiction "to consider any and all claims arising under state law." (Doc. # 1, at ¶ 3). A review of the Complaint, however, reveals only one state law claim. Specifically, Count three appears to plead a cause of action for intentional or negligent infliction of emotional distress. The gravamen of the Plaintiffs' claim is that the Defendants negligently or intentionally inflicted emotional distress by inviting them to enter the police academy, and by instructing them to quit their jobs and move into the City, without having followed proper drug screening procedures. (*See* Complaint, Doc. # 1). The Defendants have not moved for summary judgment on the Plaintiffs' emotional distress claim. In any event, having found summary judgment proper on the Plaintiffs' federal claims, the Court declines to exercise its supplemental jurisdiction over the Plaintiffs' state law emotional distress claim. *See* 28 U.S.C. § 1367(c)(3). To the extent the Plaintiffs' complaint might be read as pleading state law promissory estoppel or breach of contract claims, the Court declines to exercise supplemental jurisdiction over those claims as well. *Id.* It is well settled that a District Court may decline to exercise supplemental jurisdiction over state claims once it has dismissed all claims over which it possessed original jurisdiction. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed. *Id.; Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). Consequently, the Plaintiffs' state law claims are dismissed without prejudice to refiling in a state court of competent jurisdiction.

### III. Conclusion

The Defendants' Motion for Summary Judgment (Doc. # 19) is SUSTAINED. Judgment will enter in favor of the City of

Dayton, the Dayton Civil Service Board,[9] and Dayton Police Chief Ronald Lowe and against the Plaintiffs.[10]

Additionally, the parties are hereby notified of the Court's intent to grant summary judgment *sua sponte* in favor of Defendant Sandra Huggins, in her individual capacity, and against the Plaintiffs on their federal law claims. Defense counsel's failure to name Huggins as a moving party in the present Motion for Summary Judgment appears to have been an oversight. The Court cannot envision any circumstances under which she individually would be liable on the federal claims given the Plaintiffs' lack of a property interest in City employment. Pursuant to Fed. R.Civ.P. 56 and Sixth Circuit law, however, the Court must provide the Plaintiffs with ten days' notice before *sua sponte* entering summary judgment. *Yashon v. Gregory,* 737 F.2d 547, 552 (1984). Accordingly, the Court hereby notifies the Plaintiffs of its intent to enter summary judgment in favor of Huggins in her individual capacity on their federal law claims, unless the Plaintiffs show cause within ten days why such judgment should not be entered.

Given that the Court has not yet entered summary judgment in favor of Huggins, this Entry is *not* a final, appealable order.

---

**9.** In naming the Dayton Civil Service Board and the City of Dayton separately as Defendants, the Plaintiffs have presumed that the Board is *sui juris* and capable of being sued independently. Assuming *arguendo* that the Plaintiffs are correct, however, the Board is entitled to summary judgment given the Plaintiffs' lack of a property interest in City employment.

**10.** The City of Dayton, the Dayton Civil Service Board, and Police Chief Ronald Lowe have moved for summary judgment, and as explained above, the Court finds their Motion persuasive. The Court notes, however, that the Plaintiffs' Complaint also names Sandra Huggins as a Defendant, individually and in her capacity as Secretary and Chief Examiner for the Civil Service Board. The suit against Huggins in her official capacity, however, merely duplicates the Plaintiffs' suit against the Board itself. Consequently, the Court sustains the Defendants' Motion for Summary Judgment with respect to Huggins in her official capacity. Furthermore, given the Plaintiffs' lack of any property interest in their employment, Huggins cannot be liable personally on the Plaintiffs' federal law claims.