KIEL, APPELLANT, *v.* CIRCUIT DESIGN TECHNOLOGY, INC., APPELLEE.

(No. 54481—Decided October 31, 1988.)

*Sandvoss & Lentz* and *Thomas R. Buchanan,* for appellant.
*Calfee, Halter & Griswold* and *John R. Cernelich,* for appellee.

DYKE, J. Plaintiff-appellant Dennis Kiel appeals the trial court's decision granting defendant-appellee Circuit Design's motion for summary judgment.

On March 28, 1984, appellant was hired by the appellee to work in the electroless plating department. The appellee manufactured printed circuit boards for the electronics industry. As an electroless plater, it was appellant's job to immerse the circuit boards into tanks of various chemicals. This immersion process resulted in the escape of chemical fumes into the air.

Appellant worked without incident at this process for twenty-one months. However, on December 17, 1985 appellant was stricken with severe chest pains and breathing difficulties. Appellant was taken to the hospital where his condition improved with the administration of oxygen. Appellant was advised that his illness was related to the chemical vapors he had inhaled. On January 7, 1986, appellant went back to work with a limitation that he not be exposed to the chemical fumes. Appellee's management informed appellant that it did not have an alternate position available and gave appellant the option of being laid off. After six months, appellant requested his physician to provide a work release without limitation. Appellant was provided with a certificate which indicated that he could return to work without limita-

tion. On July 7, 1986, appellant returned to work as a floater and as such was not required to work near the heated chemical tanks. Appellant was soon reassigned to the plating department. After working in that department for a few weeks, appellant, in obvious fear for his health, reported to management that he no longer wanted to work in that particular department. The appellant was told by the personnel manager and the plant manager that no other position, besides that for which he had initially been hired, was available. Both managers informed appellant that he could either continue in the electroless plating department or quit his job. Appellant stated that his health came first and immediately quit.

Appellant in his complaint stated that appellee, when it terminated his employment, breached the express and implied provisions of its employment contract manual. The appellee moved for summary judgment, alleging that the appellant was an employee at will, and that he was therefore subject to termination with or without just cause. Attached to appellee's motion for summary judgment, among other things, were affidavits of James Zimmer, appellee's personnel manager, and Ronald Shavel, supervisor of the Plating Department. Both individuals stated that appellant, given the option of continuing as an electroless plater or quitting immediately, chose to terminate his employment. Also attached to the summary judgment motion was a disclaimer signed by appellant and dated seven months after his employment began. The disclaimer stated:

"I hereby acknowledge receipt of my personal copy of the Circuit Design Technology, Inc. Employee Handbook and Work Rules. I understand that it is my personal responsibility to read and become familiar with the content of the handbook and to comply with the policies and rules set forth in the handbook.

*"I understand that the policies and rules contained in the handbook are subject to change from time to time at the discretion of management and that the handbook is not intended to be or deemed to constitute an employment contract.*

"At any time I may become separated from Circuit Design Technology, Inc. this handbook will be returned to the personnel office before my final check will be mailed to my home address." (Emphasis added.)

The appellant opposed the motion and attached as evidence his own affidavit in which he admitted that he was given the choice of continuing as a plater or leaving and that he stated in response, "My health comes first. Terminate me." Also attached to appellant's response was the affidavit of Alex Neer, a lab technician with Circuit Design, which stated that there were ventilation problems in the area where appellant worked and that appellant in that position was exposed to chemical fumes. An affidavit of the appellant's physician was attached regarding the appellant's second hospital stay.[1]

Appellant was hospitalized September 18, 1986, after leaving appellee's employ.

The trial court granted appellee's motion for summary judgment. Appellant appeals and assigns one error for review:

"The trial court erred in granting summary judgment."

---

[1] The doctor stated in pertinent part:

"Based upon the history given by the patient, my education, examination and treatment it is my medical opinion to a reasonable degree of medical probability that Dennis Kiel's second hospitalization was proximately caused by his exposure to chemical fumes at his place of employment."

Civ. R. 56(C) sets forth the standard of review in determining whether summary judgment should be granted. In *Norris* v. *Ohio Standard Oil Co.* (1982), 70 Ohio St. 2d 1, 2, 24 O.O. 3d 1, 2, 433 N.E. 2d 615, 616, the Supreme Court discussed the purpose of Civ. R. 56:

" 'Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and *granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.* * * *' " (Emphasis added).

Appellant argues that issues of material fact exist regarding whether he quit or was forced to resign, whether he was an employee at will or an employee with contractual rights, and whether the disclaimer was valid.

The threshold question of fact is the identification of the type of employment contemplated between appellant and appellee.

It is well established that Ohio adheres to the employment-at-will doctrine. *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114. In *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, the court set forth the employment-at-will doctrine as follows: "Unless otherwise agreed, either party [employer or employee] * * * may terminate the employment relationship for any reason which is not contrary to law." *Id.* at paragraph one of the syllabus. In *Henkel* v. *Educational Research Council of America* (1976), 45 Ohio St. 2d 249, 74 O.O. 2d 415, 344 N.E. 2d 118, the court explained the employment-at-will doctrine:

" '* * * Although not absolute, the above stated rule appears to be in the nature of a strong presumption in favor of a contract terminable at will *unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other.* The presumption is grounded on a policy that it would otherwise be unreasonable for a man to bind himself permanently to a position, thus eliminating the possibility of later improving that position. Moreover, a contract of permanent employment is by its very nature indefinite, and thus any effort to interpret the duration of the contract and assess the amount of damages becomes difficult. * * *' " (Emphasis added.) *Id.* at 255, 74 O.O. 2d at 418, 344 N.E. 2d at 122.

Thus, an employment contract will be presumed to be at will unless there are "facts and circumstances which indicate that the agreement is for a specified term * * *." *Id.* at 251, 74 O.O. 2d at 416, 344 N.E. 2d at 119.

In *Mers, supra,* the court recognized two narrow exceptions to the employer's right to discharge at-will employees for any reason. The court took notice that "the existence of supplemental provisions to the *oral employment agreement* * * * would limit the * * * [employer's] discretion so that it could only terminate appellant's employment for good cause. * * *" *Id.* at 102, 19 OBR at 263, 483 N.E. 2d at 152.

In paragraph two of the syllabus, the *Mers* court stated:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

*Cohen & Co.* v. *Messina* (1985), 24

Ohio App. 3d 22, 24 OBR 44, 492 N.E. 2d 867, in commenting upon the *Mers* exception, stated:

"Such [employee] manuals may be important in establishing the terms and conditions of employment * * *. *However, in order for such manuals to be considered valid contracts, there must be a 'meeting of the minds.' * * * The parties must have a distinct and common intention which is communicated by each party to the other. * * *"* (Emphasis added.) *Id.* at 24, 24 OBR at 46, 492 N.E. 2d at 868.

Absent the necessary meeting of the minds, an employee handbook merely constitutes "a unilateral statement of company rules and regulations." *Turner* v. *SPS Technologies, Inc.* (June 4, 1987), Cuyahoga App. No. 51945, unreported; *Isgro* v. *Deaconess Hospital* (Oct. 30, 1980), Cuyahoga App. No. 41996, unreported.

The employee manual in this instance constitutes the sole circumstance which could serve to alter the terms of appellant's discharge.

The issue therefore becomes whether the handbook creates a genuine issue of material fact regarding the circumstances surrounding appellant's termination. *Turner, supra.* As stated earlier in *Cohen, supra,* there must be a "meeting of the minds" in order for a manual to be considered as part of an agreement so as to alter the terms of a discharge. In the present case, appellant had signed a disclaimer which clearly stated that the employment handbook was *not intended to be or deemed to constitute an employment contract.* It is clear from this disclaimer that no mutual assent between the parties ever occurred to treat the handbook as an employment contract.

Appellant argues that at the time of signing he did not understand what the disclaimer meant, and that an issue of fact thus exists as to the disclaimer's

validity. We disagree with appellant's argument.

"It is a general rule as to the binding effect of contracts that in the absence of fraud or mutual mistake, a party who executes a written contract cannot say that he was ignorant of its contents and thus escape liability. * * * It is a well-established principle that it is the duty of every person who enters into a contract, to learn its contents before he signs it. A party cannot shut his eyes and sign a contract and then ask to be relieved from its plain terms merely because he did not know what it contained. Contracts would have little force and effect if they could be set aside upon such ground." (Footnotes omitted.) 17 Ohio Jurisprudence 3d (1980) 447-448, Contracts, Section 18.

Appellant received the handbook and the disclaimer. He was afforded an opportunity to read and become familiar with both. We see no issue of fact as to the disclaimer's validity. The disclaimer was clear that no employment contract was intended or existed in the contents of the handbook.

Because there was no contractual intent present between the parties, appellant's employment, as a matter of law, was at will. The manual therefore was merely a statement by appellee of its rules and regulations and was not part of the at-will employment agreement between the parties. *Turner, supra.*

The second narrow exception set forth in *Mers* which can alter the general rule that an employment is at will is the doctrine of promissory estoppel. *Mers* held:

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee, and if so, whether the expected action or forbearance actually

resulted and was detrimental to the employee." *Id.* at paragraph three of the syllabus.

In order to prevail upon a promissory estoppel claim, a movant must demonstrate the following four elements which comprise the doctrine: (1) There must be a promise clear and unambiguous in its terms; (2) there must be reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Cohen, supra.*

In the present case, appellant never demonstrated by affidavit or other evidence that appellee promised the manual would serve to alter the terms of his discharge. Absent a promise, none of the remaining elements of promissory estoppel are satisfied and appellant cannot argue that promissory estoppel should serve to modify the terms of appellant's at-will employment with appellee. See *Turner, supra.*

Lastly, we note that affidavits of appellant and the personnel manager of the appellee are not in conflict as to appellant's voluntary termination. Both clearly indicate that appellant was told no other position in the company was available besides that for which he was originally hired. The affidavits presented a clear picture that appellant, given this information, chose to terminate his employment with the appellee.

Given our conclusion that appellant's employment was terminable at will by either party and was not modified or altered by any subsequent mutual assent, reasonable minds could only conclude after construing the evidence in a light most favorable to the appellant that there was no genuine issue of material fact. Thus, appellant's employment was terminable at will by either party. The trial court properly granted summary judgment and appellant's assignment of error is therefore overruled.

*Judgment affirmed.*

ANN MCMANAMON, P.J., and J. V. CORRIGAN, J., concur.