OPINION
{¶ 1} Appellant, David Brown, appeals from a judgment of the Trumbull County Court of Common Pleas, granting summary judgment to appellee, Lowe's, Inc. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Appellee offered appellant a position as a delivery driver. Appellant accepted, and he commenced employment on April 10, 1998. This breach of contract action arises from appellee's termination of appellant's employment, and the following facts are relevant.
 {¶ 3} On March 31, 1998, appellant submitted an application for employment at appellee's store in Warren, Ohio. The application included a section with a heading, entitled "Applicant's Agreement and Certification," which included six paragraphs, the fifth of which read:
 {¶ 4} "I also understand that all employment with Lowe's Companies, Inc. and its Subsidiaries, Lowe's Home Centers, Inc. and the Contractor Yard, Inc., or any affiliate thereof is `at will' and may be terminated by Lowe's or by me at any time and for any reason or no reason at all with or without notice."
 {¶ 5} Appellant admitted in his deposition that he read and understood everything on the application.
 {¶ 6} Appellant started employment as a delivery driver on April 10, 1998. At the commencement of his employment, appellant attended an orientation, during which he reviewed and signed various papers, including a document that contained a section, entitled, "Lowe's Orientation Workbook." In pertinent part, the section read:
 {¶ 7} "I certify that I have received a copy of the Lowe's Orientation Workbook. I understand that this reference guide, its contents and any subsequent additions or revisions thereto do not constitute any contractual obligations on Lowe's or myself. I further understand that the Company reserves the right to modify, change, suspend or cancel at any time, with or without written or verbal notice any or all of the subjects contained therein.
 {¶ 8} "It is agreed that the employment relationship between me and the Company is at will and is terminable at the will of either party."
 {¶ 9} Appellant admitted initialing this section of the document.
 {¶ 10} Below that section, the document contained another section, entitled, "Contract of Employment." That section read, in pertinent part:
 {¶ 11} "This agreement, made this 10th day of April, 1998, by and between Lowe's (#244) Companies, Inc., Employer and David M. Brown, Employee, and in consideration of the application for employment and of the mutual covenants herein contained, witnesseth [sic] as follows:
 {¶ 12} "* * *
 {¶ 13} "2. It is further agreed by and between the parties hereto that this agreement shall be for an indefinite term and shall be terminable at the will of either party without notice and without cause.
 {¶ 14} "* * *
 {¶ 15} "4. It is further agreed by and between the parties hereto that this agreement shall constitute the entire contract and agreement between the said parties and shall not be varied, changed, altered, or contradicted by the said parties orally, and no change of any of the provisions herein shall be valid unless approved in writing by the President of Lowe's."
 {¶ 16} Appellant admitted that he signed his name at the end of the contract section, acknowledging that he read and understood the terms of the contract. Appellant also specifically admitted that he understood that he was an at-will employee and that he understood the meaning of the term. He testified that an attorney had "briefed [him] pretty well on" the term.
 {¶ 17} The actual Orientation Workbook ("the orientation workbook") that appellant received at his orientation reiterated the terms of his at-will employment contract. The orientation workbook stated in its preface:
 {¶ 18} "Your employment relationship with Lowe's is governed by the `Employment At Will' doctrine.
 {¶ 19} "This simply means that the contract of employment between you and the Company is terminable at the will of either party, with or without cause, at any time and for any reason.
 {¶ 20} "This policy cannot be modified by any statements or omissions or statements by any member of management or Company representative, manuals, guides, employment documents, or Company materials provided in connection with your employment, whether made pre or post employment unless approved, in writing by the President of Lowe's."
 {¶ 21} The orientation workbook also contained a section, entitled "Standards of Conduct and Discipline," which listed types of disciplinary action appellee could issue to an employee. That section explained:
 {¶ 22} "This list does not constitute an employment contractnor does it establish or imply a progressive discipline policy.
Furthermore, there is no implication that you will only be terminated for just cause for a violation of these rules." (Emphasis added.)
 {¶ 23} Appellant acknowledged receiving the orientation workbook and that he understood its language.
 {¶ 24} Appellant contends that, "when [he] was employed," he met with appellee's personnel director, Linda Durst ("Durst"). Appellant argues that Durst specifically told him words to the effect that appellee had a progressive disciplinary policy that was contained in the Human Resources Management Guide ("the management guide"). Only in appellant's affidavit attached to his reply to appellee's motion for summary judgment does appellant make such statements. Appellant did not mention this meeting in his deposition.
 {¶ 25} Moreover, the statements contained within appellant's affidavit are not specific. In the affidavit, appellant stated, "[w]hen I was employed, personnel Coordinator Linda Durst that [sic] Lowe's had employment policies governing discipline. She went over the policies on reprimands with me. * * * Upon Lowe's going over the Human Resources management guide and employee handbook, I was told that there was a progressive disciplinary policy." (Emphasis added.)
 {¶ 26} This statement does not precisely indicate at what time in the course of events Durst provided the details of the policy to appellant, and it is unclear from appellant's affidavit if she did so at the commencement of his employment or sometimeduring the course of his employment. Further, appellant testified in his deposition that he did not "come to understand" the disciplinary process until he actually looked up and read the policy, which was after he was disciplined and well after he began employment. The parties do not dispute that appellant was never given a copy of the management guide.
 {¶ 27} Appellant started employment as a delivery driver and worked in that capacity for a number of months. He was promoted to assistant lumber department manager, which paid several more dollars an hour. Appellant then returned to the position of delivery driver for the balance of his employment, as he preferred the hours connected with that position.
 {¶ 28} When appellant returned to the delivery driver position, appellee reduced his pay to an amount commensurate with the position. Appellant learned that he was receiving less than another delivery driver and considered looking for another job. Appellant admitted that he never actually applied for another job.
 {¶ 29} Appellant confronted store manager John Lerch ("Lerch") about the pay disparity. According to appellant, Lerch praised him and told him that appellee could not afford to lose him because he was too important. According to appellant, "[Lerch] said how about I do this, he said how about I give you a raise up to what he's * * * making, and later on this year when we get hit hot and heavy, I'll give you a raise on top of that." Appellant received the first pay raise Lerch had promised, but appellant never received the second pay raise.
 {¶ 30} In August 2000, appellee had an opening for the position of delivery department manager, and appellee posted a notice of the opening. Appellant and Ed Adams ("Adams"), another delivery driver, applied. Appellee awarded the position to Adams. Adams told appellant that he had been awarded the position because he did not, unlike appellant, work a second job and that he, unlike appellant, had a telephone at home. Appellant did not believe this was fair and expressed his displeasure to appellee's assistant store manager, Kim Holland ("Holland"). Appellant also spoke with other members of appellee's administration, who confirmed that one of the reasons appellant was not selected was because he did not have a telephone at home.
 {¶ 31} According to appellee, appellant's attitude about work was affected by his failure to obtain the manger position. On October 4, 2000, Holland and Adams issued two write-ups to appellant. One, dated September 26, 2000, labeled as an initial performance report, was for poor performance and listed several tasks appellant failed to perform the previous day. The second write-up, dated September 27, 2000, labeled as a written warning, was for violating company policy and listed two tasks appellant failed to perform the previous day. Appellant admitted that he was guilty of failing to perform the stated tasks.
 {¶ 32} Appellant argues he believed that appellee's policy prohibited appellee from issuing him an initial warning and a written warning at the same time. Accordingly, appellant went to the office of appellee's personnel coordinator, Suzanne Ecrement ("Ecrement"), and read the policy on disciplinary procedures in appellee's management guide.
 {¶ 33} The management guide outlined a progressive disciplinary policy. The management guide also contained a disclaimer. The disclaimer provided that the disciplinary procedures set out "are intended as guidelines and will not be interpreted as constituting any form of employment contract obligation" and reiterated that "employment with the Company is at will * * * and may be terminated at any time by the employee or by the Company at its discretion."
 {¶ 34} Appellant then met with Holland and asked her to sign a note stating that appellant had received both the initial and written warnings at the same time. Holland refused. Appellant told her that people were trying to get him fired, and Holland asked to whom he was referring. Appellant responded that he had a feeling that one of the individuals was Adams, referring to him as a "little red-headed fucker." Holland told him that his conduct constituted insubordination and told him to go home.
 {¶ 35} Two days later, on October 6, 2000, Lerch informed appellant that his employment was terminated. Lerch presented appellant with a write-up, which appellant refused to sign, indicating that he was terminated for "gross insubordination" and "verbal abuse and rude behavior on company property on [October 4, 2000]."
 {¶ 36} On October 13, 2001, appellant filed a complaint against appellee. Appellant put forth claims for breach of implied contract and promissory estoppel arising from his termination from appellee's employ on October 6, 2000. Specifically, appellant alleged that appellee's "conduct constituted a breach of an implied contract as an acknowledged exception to employment-at-will. [Appellee] maintained a Guide published to [appellant] providing for progressive discipline and even stipulating that counseling sessions be held upon which [appellant] relied." Accordingly, appellant alleged that appellee breached the contractual relationship.
 {¶ 37} With regard to his claim for promissory estoppel, appellant alleged that the laudatory statements of his store manager referencing his performance "combined with the promise of a pay raise created a promise or representation of continued job stability upon which [appellant] detrimentally relied through the refusal of alternate employment."
 {¶ 38} Discovery ensued, and appellee deposed appellant on December 14, 2001. Appellee filed a motion for summary judgment on July 15, 2002, and appellee filed appellant's deposition in support of its motion. Appellant timely replied, attaching to his reply his affidavit and an excerpt from the management guide that outlined the disciplinary process.
 {¶ 39} The trial court issued a March 21, 2003 judgment entry. The trial court first stated that there existed no facts upon which reasonable minds could differ. The trial court then found that "[appellant] offered no fact to avoid the `at will' terms of employment concerning the breach of implied contract claim and on the promissory estoppel claim." Consequently, the trial court granted summary judgment to appellee on both of appellant's claims.
 {¶ 40} From this judgment, appellant sets forth the following assignment of error:
 {¶ 41} "[1.] The Trial Court Abused Its Discretion in Granting Appellee's Rule 56 Motion."
 {¶ 42} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-12; Bostic v. Connor (1988), 37 Ohio St.3d 144, 146.
 {¶ 43} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 44} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 45} In appellant's sole assignment of error, he argues that the trial court erred by granting appellee summary judgment. Specifically, appellant contends that even though there existed an at-will employment relationship, there also existed a "subsidiary" contractual relationship which obligated appellee to adhere to a progressive discipline policy prior to firing. According to appellant, this subsidiary contract was based upon the progressive disciplinary policy contained within the management guide as was allegedly orally communicated from Durst to appellant "when [he] was employed." Appellant testified that he did not read and "come to understand" the disciplinary policy until after he received two write-ups for violating appellee's policies and well after he began employment. However, appellant argues that appellee breached this "subsidiary" contract.[1] We disagree.
 {¶ 46} Ohio has long recognized the employment at-will doctrine. Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100. According to the doctrine, "`[u]nless otherwise agreed, either party * * * may terminate the employment relationship [at any time and] for any reason not contrary to law.'" Kiel v.Circuit Design Technology, Inc. (1988), 55 Ohio App.3d 63, 65, quoting Mers at paragraph one of the syllabus. Further, there exists a strong presumption in favor of a contract terminable at-will. Kiel at 65; Mers at fn. 1.
 {¶ 47} In Mers, the Supreme Court of Ohio recognized that the existence of supplemental provisions to an employment agreement can limit the employer's discretion, and an employer can then only terminate an employee's employment for good cause. Id. at 102. Accordingly, the Court recognized two narrow exceptions to the employer's right to discharge at-will employees for any reason: (1) the existence of implied or express contractual provisions which alter the terms of discharge and (2) the existence of promissory estoppel where the representations or promises have been made to an employee. Id. at paragraphs two and three of the syllabus.
 {¶ 48} Referencing the implied contract exception, the Mers
court stated that "[t]he facts and circumstances surrounding an * * * employment-at-will agreement, including the character of the employment, custom, and course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge." Id. at paragraph two of the syllabus.
 {¶ 49} Employee manuals, company handbooks, and similar documents may be important in establishing the terms and conditions of employment, and they may create implied contracts.Cohen Co. v. Messina (1985), 24 Ohio App.3d 22, 23-24. However, for such documents "to be considered valid contracts, there must be a `meeting of the minds.'" Id. at 24, citingParklawn Manor, Inc. v. Jennings-Lawrence Co. (1962),119 Ohio App. 151, 156. "Absent the necessary meeting of the minds, [a handbook or manual] merely constitutes a `unilateral statement of company rules and regulations.'" Kiel at 66, quoting Turner v.SPS Technologies, Inc. (June 4, 1987), 8th Dist. No. 51945, 1987 Ohio App. LEXIS 7318. See, also, Stites v. Napoleon SpringWorks, Inc. (Nov. 15, 1996), 6th Dist. No. F-96-002, 1996 Ohio App. LEXIS 4925, (holding that unless there is mutual assent to a contract, handbook, or similar document, the document is merely a list of rules of conduct or policies which can be modified by the employer at any time). The parties must have a distinct and common intention which is communicated by each party to the other.
 {¶ 50} "`[T]he burden is upon the party asserting the existence of an employment contract * * * to prove each element necessary for the formation of the contract.'" Able/S.S., Inc.v. KM E Services, Inc., 11th Dist. No. 2000-L-162, 2002-Ohio-6470, at ¶ 34, quoting Bakery v. Jones HentyEngineers, Ltd. (Mar. 30, 2001), 6th Dist. No. L-00-1198, 2001 Ohio App. LEXIS 1497. Thus, an employee who asserts the existence of an implied contract must prove the existence of each element necessary to the formation or modification of a contract, including offer, acceptance, consideration, and mutual assent. See, e.g., Tersigni v. Gen. Tire, Inc. (1993),91 Ohio App.3d 757,760; Gargasz v. Nordson Corp. (1991),68 Ohio App.3d 149,154.
 {¶ 51} Turning to the instant matter, we note that the disclaimer contained within the contract and the management guide precludes the implied contract which appellant maintains existed. "[A] disclaimer stating that employment is at-will precludes an employment contract based upon the terms contained within [an] employee handbook." Whistler v. W. Res. Care Services. Corp.,
7th Dist. No. 00 C.A. 90, 2001-Ohio-3498, 2001 Ohio App LEXIS 5811, at 17, citing Wing v. Anchor Media, Ltd. Of Texas (1991),59 Ohio St.3d 108, 110. See, also, Smiddy v. Kinko's, Inc., 1st Dist. No. C-020222, 2003-Ohio-446, at ¶ 21, quoting Wing at syllabus.
 {¶ 52} In the instant matter, the contract was clear that appellant's employment was at-will. The contract stated that the "* * * agreement shall be * * * terminable at the will of either party without notice and without cause."
 {¶ 53} Further, the management guide contained both the progressive disciplinary policy and a disclaimer. The disclaimer provided that the disciplinary procedures set forth in the management guide "are intended as guidelines and will not be interpreted as constituting any form of employment contract obligation." The disclaimer also reiterated that "employment with the Company is at will * * * and may be terminated at any time by the employee or by the Company at its discretion." Accordingly, the contract itself and the management guide both preclude an implied contract based upon the terms set forth by the progressive disciplinary policy.
 {¶ 54} We also note that it is unclear whether appellant's alleged conversation with Durst occurred before or after he signed the written employment contract. The record indicates that, during an orientation session, appellant signed various papers, including the contract. In his appellate brief, appellant contends that, "when [he] was employed," Durst specifically told him words to the effect that appellee had a progressive disciplinary policy that was contained in the management guide.
 {¶ 55} Assuming arguendo that appellant's conversation with Durst occurred before the parties entered into a written contract, appellant's argument still fails. According to the parol evidence rule, "`absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" Galmish v. Cicchini, 90 Ohio St.3d 22,26, 2000-Ohio-7, quoting 22 Williston, Contracts, (4 Ed. 1999) 569-570, Section 33:4.
 {¶ 56} The purpose of the rule is to protect the integrity of written contracts. Ed Schory Sons, Inc. v. Soc. Natl. Bank
(1996), 75 Ohio St.3d 433. "By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments." Galmish at 26. Accordingly, extrinsic evidence cannot contradict the unambiguous terms of a final, written agreement. Id.
 {¶ 57} In the instant matter, the written employment contract clearly established that appellant's employment was at will and terminable at any time by either party. Further, the contract was fully integrated. The contract states, in pertinent part:
 {¶ 58} "2. It is further agreed by and between the parties hereto that this agreement shall be for an indefinite term and shall be terminable at the will of either party without notice and without cause.
 {¶ 59} "* * *
 {¶ 60} "4. It is further agreed by and between the parties hereto that this agreement shall constitute the entire contract and agreement between the said parties and shall not be varied, changed, altered, or contradicted by the said parties orally, and no change of any of the provisions herein shall be valid unless approved in writing by the President of Lowe's."
 {¶ 61} Appellant admitted that he signed his name at the end of the contract section, acknowledging that he read and understood the terms of the contract.
 {¶ 62} Therefore, because the contract in the instant matter was integrated, the parol evidence rule bars evidence suggesting that there existed any implied contract altering the provisions of that written contract. The parol evidence rule thus bars the existence of any implied contract based upon the disciplinary policy contained within the management guide.
 {¶ 63} However, appellant argues that the progressive disciplinary policy outlined in the manual did not contradict the terms of the written contract because the contract and the policy could be read together. According to appellant, the written contract and the progressive disciplinary policy were in "perfect symmetry" because appellee could fire appellant at any time but could do it in a manner consistent with the policy. Thus, appellant essentially contends that the parol evidence rule does not apply. Appellant's point is not well-taken.
 {¶ 64} The plain meaning of at-will employment is that an employer can terminate an employee's contract at its will, for any reason, and at any time. See, e.g., Kiel at 65; Mers at 103; Roller v. Wright (Oct. 1, 1986), 9th Dist. No. 4004, 1986 Ohio App. LEXIS 8615, at 4; Heckler v. DeVilbiss, Inc. (June 3, 1988), 6th Dist. No. L-87-332, 1988 Ohio App. LEXIS 2142; Ferrov. Dayton Newspapers, Inc. (May 9, 1997), 2d Dist. No. 16042, 1997 Ohio App. LEXIS 1837. A progressive disciplinary policy would clearly limit appellee's contractual right to terminate appellant's employment on the spot and at any time. Such a policy would thus contradict the written, integrated contract in the instant matter. Accordingly, the parol evidence rule bars evidence suggesting that there existed an implied contract obligating appellee to adhere to a progressive disciplinary policy when terminating appellant's employment.
 {¶ 65} Further, appellant's argument also fails if we presume his conversation with Durst occurred after the parties entered into the written contract. As stated earlier, employee manuals, company handbooks, and similar documents may be important in establishing the terms and conditions of employment, and they may create implied contracts. Cohen at 24. However, "[t]he general rule is that a written contract may be orally amended if the oral amendment has the essential elements of a binding contract."Carrocce v. Shaffer (Oct. 31, 1997), 11th Dist. No. 96-T-5521, 1997 Ohio App. LEXIS 4845, at 9, citing Richland Builders, Inc.v. Thome (1950), 88 Ohio App. 520, 527. As such, a contract may only be orally amended if there exists a meeting of the minds. See, e.g., Kiel at 66, quoting Turner.
 {¶ 66} In the instant matter, appellant stated in his affidavit that Durst told him about appellee's progressive disciplinary policy sometime "when [he] was employed." Appellant, however, admitted in his deposition that he did not "come to understand" the policy until he read the management guide in Ecrement's office after he was disciplined and well after he began employment. As such, there existed no genuine issue of material fact that there was no meeting of the minds requisite to establish an implied contract based upon the progressive disciplinary policy.
 {¶ 67} In conclusion, the trial court correctly granted summary judgment to appellee, as there existed no genuine issues of material fact that appellant could terminate appellant's employment at-will and at any time. Appellee put forth evidence, of the type listed in Civ.R. 56(C), demonstrating that there existed no genuine issues of material fact that the applicable employment contract authorized appellee to terminate appellant's employment at any time. Appellant failed to meet his reciprocal burden to put forth evidence affirmatively establishing a genuine issue of material fact as to whether there existed an implied contract obligating appellee to adhere to a progressive disciplinary policy.
 {¶ 68} Accordingly, appellee was entitled to judgment as a matter of law. Appellant's assignment of error is without merit, and we hereby affirm the judgment of the trial court.
Ford, P.J., Rice, J., concur.
[1] We note that from this language, and from the body of appellant's brief, appellant only appeals the trial court's grant of summary judgment on his breach of implied contract claim. Appellant does not discuss his claim for breach of promissory estoppel or the facts surrounding that claim. Thus, we will only address the trial court's grant of summary judgment on appellant's breach of implied contract claim.